United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ANGEL PIZANA,

        Petitioner,

vs.

RANDY GROUNDS, Warden,

        Respondent.

No. C 08-5462 PJH (PR)

**ORDER DENYING HABEAS PETITION AND DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The petition is directed to a denial of parole.

This court ordered respondent to show cause why a writ should not issue. After respondent had answered and petitioner had filed a traverse, the United States Court of Appeals for the Ninth Circuit decided *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), in which a number of important issues involving parole habeas cases were raised. In consequence, the court ordered the parties to provide supplemental briefs addressing the impact of *Hayward* on this case, which they have done. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

Petitioner pled guilty in Los Angeles County Superior Court to kidnaping for ransom and two counts of second-degree robbery. In 1993 he was sentenced to a term of life in prison with the possibility of parole, and he also received a three-year sentence for using a firearm in the kidnaping. On October 30, 2007, after a hearing at which petitioner was represented and was given an opportunity to be heard, the Board of Prison Terms ("Board") found petitioner unsuitable for parole.

**DISCUSSION**

**I.   Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d

1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## II.  Impact of *Hayward*

In *Hayward* the en banc court held that there is no constitutional right to "release on parole, or to release in the absence of some evidence of future dangerousness" arising directly from the Due Process Clause of the federal constitution; instead, any such right "has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555. The court overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006); and *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), "to the extent they might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release . . . ." *Hayward*, 603 F.3d at 556. All three of those cases had discussed the "some evidence" requirement, but in all three it was clear that the requirement stemmed from a liberty interest created by state law; that portion of the cases, therefore, was not overruled by *Hayward*. *See Biggs*, 334 F.3d at 914-15; *Sass*, 461 F.3d at 1127-19; *Irons*, 505 F.3d at 850-51; *see also Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (post-*Hayward* case; noting that California law gives rise to a liberty interest in parole). However, all three also contained references in dictum to the possibility that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, [would] run[] contrary

to the rehabilitation goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 916-17; *see also Sass*, 461 F.3d at 1129; *Irons*, 505 F.3d at 853-54.  It appears that this possibility, referred to below as a "*Biggs* claim," is the only thing that was "overruled" by *Hayward*.

Aside from making clear that there could be no *"Biggs* claim" arising directly from the Due Process Clause of the Constitution, cases decided subsequent to *Hayward* have clarified that federal habeas review of California parole decisions remains much the same as it was prior to that decision.  The Ninth Circuit still recognizes that California law gives rise to a liberty interest in parole.  *Pirtle*, 611 F.3d 1015, 1020-21 (9th Cir. 2010); *Cooke,* 606 F.3d at 1213-14; *Pearson,* 606 F.3d at 610-11.  Under California law, "some evidence" of current dangerousness is required in order to deny parole.  *Hayward*, 603 F.3d at 562 (citing *In re Lawrence*, 44 Cal. 4th. at 1191, 1209-15 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)).  "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state."  *Cooke*, 606 F.3d at 1213.  A federal court considering a "some evidence" claim directed to a parole denial thus must determine whether there was "some evidence" of current dangerousness to support the parole board's decision; if not, the prisoner's due process rights were violated.  This was also true prior to *Hayward*, although now the rationale is that the Court is applying California's "some evidence" rule as a component of the required federal due process.

Respondent contends that *Hayward* allows only review for whether a state's parole procedures provide adequate procedural protections, and for whether those procedures were arbitrarily applied, not for whether there actually was "some evidence" to support the denial.  Supp. Br. at 9-10.   He asserts that Ninth Circuit cases decided subsequent to *Hayward* – at the time the brief was filed those were *Cooke* and *Pearson* – are wrongly decided.  This court must follow the Ninth Circuit's cases, so these contentions are rejected.

///

///

4

**III.    Issues Presented**

    **A.    Respondent's Contentions**

In the answer, respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. He says these contentions are made to preserve the issues for appeal. As discussed further below, even after the en banc decision in *Hayward v. Marshall,* 603 F.3d 546 (9th Cir. 2010) (en banc), these contentions are incorrect. *See Pirtle v. California Bd. of Prison Terms*, 611 F.3d 1015, 1020-21 (9th Cir. 2010) (California law creates a federal liberty interest in parole; that liberty interest encompasses the state-created requirement that a parole decision must be supported by "some evidence" of current dangerousness); *Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (same); *Pearson v. Muntz*, 606 F.3d 606, 610-11 (9th Cir. 2010) (same).

Respondent is correct, however, that if the court concludes that the Board's decision was not supported by "some evidence," the correct remedy is not to order that he be released on parole, but rather to order that the Board conduct another eligibility hearing at which the prisoner's rights are respected. *See Haggard v. Curry*, No. 10-16819 (9th Cir. Order Oct. 12, 2010).

    **B.    Petitioner's Claims**

As grounds for federal habeas relief, petitioner contends that: (1) the Board breached the provision in his plea agreement that he would be paroled as soon as he became eligible; and (2) his due process rights were violated by the Board's reliance on the circumstances of his crime to deny parole.

        **1.    Breach of Plea Agreement**

Petitioner contends that the Board has breached his plea bargain. Respondent contends that this claim is barred (1) by the statute of limitations; and (2) by collateral estoppel.

5

**a.    Limitations**

Respondent contends that this claim is untimely because it was not filed within one year of the date when petitioner should have been paroled under his interpretation of the plea agreement.

The statute of limitations provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. *Id.* § 2244(d)(2).

The limitations period of Section 2244(d) applies to "all habeas petitions filed by persons in 'custody, pursuant to the judgment of a State court,' . . . even if the petition challenges a pertinent administrative decision rather than a state court judgment." *Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004). Because petitioner is in custody as a result of a state court judgment, the statute of limitations as provided in Section 2244(d) therefore is applicable to him. For claims that the state breached a plea agreement, such as petitioner raises here, the limitations period begins running on the date the petitioner knew or should have known of the breach. *See Bryant v. Curry*, 2010 WL 3168385 at *4 (N.D. Cal. 2010) (limitations period began on date petitioner knew or should have known of the breach); *Burns v. California,* 2009 WL 2381423 at *3 (C.D. Cal. 2009) (limitations period

began running on the date of the breach)[1]; *Crenshaw v. Tilton*, 2008 WL 878887 at *6 (S.D. Cal. 2008) (limitations period begins running on date prisoner knew or should have known there had been a breach); *Singleton v. Curry*, 2007 WL 1068227 at *2 (N.D. Cal. 2007) (limitations period for breach of plea bargain claim is determined under section 2244(d)(1)(D)); *Daniels v. Kane*, 2006 WL 1305209, *1 (N.D. Cal. 2006) (statute of limitations begins to run on "the date a petitioner knew or should have known that a breach occurred"); *Murphy v. Espinoza*, 401 F.Supp.2d 1048, 1052 (C.D. Cal. 2005) (statute of limitations begins to run on date petitioner became aware, or should have become aware, that the plea agreement had been breached). Petitioner's contention that the limitations period begins anew each time the Board denies parole thus is incorrect. Once he knew or should have known of the breach, the limitations period began running.

Petitioner contends that his plea agreement provided that he would be paroled after seven years on his seven years to life sentence. Pet. at 8. He was sentenced on July 27, 1993, so even ignoring time credits, the latest he could have become aware that he was not going to be paroled in seven years was in July of 2000. *See* Pet., Ex. A (Abstract of Judgment). This petition was not filed until December 4, 2008, long after the one-year limitations period had expired, and petitioner does not contend that he is entitled to tolling. This claim is barred by the statute of limitations.

### b.   **Collateral Estoppel**

Respondent also contends that this claim is barred by collateral estoppel, because it was previously raised and rejected in C 05-2457 PJH (PR), *Pizana v. Kane* (N.D. Cal. Feb.

---

[1] In *Burns* the court characterized the limitations period as starting "on the date the inmate claims the state breached the plea agreement." 2009 WL 2381423 at *3. The court cited *Murphy v. Espinoza*, 401 F.Supp.2d 1048, 1052 (C.D. Cal. 2005), in support of that proposition, describing *Murphy*'s holding as "(statute of limitations begins to run on date petitioner claimed State breached plea agreement)." *Burns*, 2009 WL 2381423 at *3. In fact, however, *Murphy* treated the limitations period as starting when the petitioner knew, or should have known, there had been a breach, and did not say that it started on the date of breach. *Murphy*, 401 F.Supp.2d at 1052. Furthermore, even in *Burns* itself the court applied the "knew or should have known" standard, despite having recited the "date of breach" standard earlier in the ruling. *Burns*, 2009 WL 2381423 at *3. This court therefore concludes that *Murphy* and *Burns* are in fact authority for the proposition that the correct trigger date is when the petitioner knew or should have known of the breach.

25, 2009) (order denying petition). However, collateral estoppel does not apply in habeas proceedings. *Johnson v. Lumpkin*, 769 F.2d 630, 636 n. 16 (9th Cir. 1985).

That petitioner previously presented this claim in a habeas case and it was rejected is, however, ground for dismissal on a different theory. A claim presented in a second or successive petition under 28 U.S.C. § 2254 that was presented in a prior petition must be dismissed. 28 U.S.C. § 2244(b)(1); *Babbitt v. Woodford*, 177 F.3d 744, 745-46 (9th Cir. 1999). The claim is successive, so must be dismissed.

### 2. Use of Circumstances of the Offense to Deny Release

Petitioner contends that the circumstances of his offense were not sufficient to support the denial of parole, citing *In re Lawrence*, 44 Cal. 4th 1181 (2008).

A federal district court reviewing a California parole decision "must determine 'whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)). That requirement was summarized in *Hayward* as follows:

> As a matter of California law, 'the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety.' There must be 'some evidence' of such a threat, and an aggravated offense 'does not, in every case, provide evidence that the inmate is a current threat to public safety.'

*Id.* at 562 (quoting *Lawrence*, 44 Cal.4th. at 1191, 1209-15); *see also Cooke*, 606 F.3d at 1214 (describing California's "some evidence" requirement). The circumstances of the commitment offense itself "cannot constitute evidentiary support for the denial of parole 'unless the record also established that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicated that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.'" *Cooke*, 505 F.3d at 1216 (quoting *Lawrence*, 44 Cal. 4th at 1214).

The facts of the offense were read into the record by the Presiding Commissioner

and are not disputed. On November 10, 1992, the victim was lured into a car with a statement that the victim's brother was wanted to see him at a local bar. Pet., Ex. B (transcript of parole hearing, hereafter cited as "Tr.") at 13. There were three men in the car, none of whom was petitioner. The victim was held at gunpoint, stripped of his rings, hit behind the ear with a gun, and relieved of his wallet. *Id.* He was taken to an apartment in East Los Angeles where others awaited, including petitioner. *Id.* Petitioner was armed with a .22 pistol. *Id.* The victim was then driven to a motel in Santa Ana, where he was forced to strip and was tied up by petitioner. *Id.* "While lying on the floor, tied up, the victim was kicked by different individuals, including the [petitioner], and was threatened with death. [¶] During the night the [petitioner] placed a plastic bag over the victim's head, causing him to pass out briefly. He regained consciousness after the bag was removed." *Id.* at 14. The victim was forced to call his brother; the kidnappers demanded a ransom of $1,500,000. *Id.* The victim's brother called police. *Id.* The police apprehended three of the suspects, including petitioner, at the ransom drop. *Id.* at 15.

At the time of the hearing in 2007, petitioner was approximately thirty-seven years old and had served about thirteen years on his sentence of life with the possibility of parole. The offense was both reckless and cruel; it could easily have led to the death of the victim, and petitioner's placing a plastic bag over the victim's head, then taking it off after he lost consciousness, was vicious torture. The *Lawrence* standard requires more than this to support a finding of current dangerousness, however: "'something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicat[ing] that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.'" *Cooke*, 505 F.3d at 1216 (quoting *Lawrence*, 44 Cal. 4th at 1214). Here, that "something" was that (1) some of petitioner's testimony before the Board was evasive, suggesting that he had not come to terms with his offense, *id.* at 16-21, 24, 29-31; (2) he had not learned a vocation, only working as a washing machine operator in the laundry, *id.* 33; (3) he had not learned the twelve steps of Alcoholics Anonymous,

9

despite having attending meetings for years, *id.* at 34-35; (4) he had a disciplinary notation from 2002 for stealing, which suggests he has not decided to conform his conduct to the law, *id.* 39; and (5) the psychological report was distinctly negative, the psychologist pointing out petitioner's minimization of his crime and predicting that he would backslide if released, *id.* at 47-48.

In light of this evidence, the state courts' applications of the California "some evidence" requirement, and those courts' consequent rejections of the claim, were not "based on an unreasonable determination of the facts in light of the evidence."  *See* 28 U.S.C. § 2254(d)(2).  This claim therefore cannot be the basis for federal habeas relief.  *See Cooke*, 606 F.3d at 1215 (federal habeas court considering California parole "some evidence" claim must apply § 2254(d)(2)); *Hayward*, 603 F.3d at 562-63 (requiring application of California's "some evidence" standard).

### C.  *Biggs* Claim

Although it is not entirely clear, it may be that petitioner also is trying to present a "*Biggs* claim," a claim that the Board violated his due process rights by repeatedly denying parole based solely on the circumstances of his offense.

In *Biggs* the court said, in dictum, that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitation goals espoused by the prison system and could result in a due process violation."  *Biggs v. Terhune*, 334 F.3d 910, 916-17 (9th Cir. 2003).  As discussed above, the court in *Hayward* overruled any implication that such a claim might be viable.  *Hayward*, 603 F.3d at 556.  To the extent petitioner intends to raise a "*Biggs* claim," it is without merit.

### 13.  Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254

(effective December 1, 2009).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal).  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The certificate must indicate which issues satisfy this standard.  *See id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This was not a close case.  For the reasons set out above, jurists of reason would not find the result debatable or wrong.  A certificate of appealability will be denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.  Petitioner is advised that although a certificate of appealability has been denied, if he wishes the court of appeals to consider whether one should issue he should also file a notice of appeal in this court.  *See* Rule 11(a), Rules Governing § 2254 Cases.

**CONCLUSION**

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  October 25, 2010.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\HC.08\PIZANA5462.RUL.wpd

11